UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BREYANNA MCMILLIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-189-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OLIVE GARDEN HOLDINGS, LLC, | ) | **MEMORANDUM OPINION** |
| doing business as Olive Garden | ) | **AND ORDER** |
| Restaurant, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the defendant's motion to dismiss and compel arbitration. [Record No. 8] The Court will deny the motion for the reasons that follow.

**I.**

Plaintiff Breyanna McMillian (hereafter, "the Plaintiff" or "McMillian") submitted an electronic application on November 5, 2016, seeking employment by Defendant Olive Garden Holdings, LLC (hereafter, "the Defendant" or "Olive Garden"). The application included the following provision:

> I understand that the Darden Companies, including Olive Garden . . ., have in place a Dispute Resolution Process (DRP), and I further acknowledge and agree that if I am offered and accept employment, any dispute between me and any of the Darden Companies relating to my employment and/or my separation from employment, shall be submitted within one (1) year of the day which I learned of the event and shall be resolved pursuant to the terms and conditions of the DRP.

[Record No. 8-2, p. 4] The Plaintiff "accepted" the DRP provision and signed the application electronically. *Id.* at pp. 4-5. McMillian alleges that, after she submitted the application, Josh

Barcomb interviewed her and the Plaintiff was told that she had received the job. [Record Nos. 1-1, p. 3; 9-1, p. 1] Barcomb instructed McMillian to attend new employee training the following day. *Id.*

McMillian attended a group training session at an Olive Garden restaurant in Lexington, Kentucky in early November 2016. The Plaintiff alleges that approximately two hours into the training session, manager Sean Nealy told her that he would not have hired her because she was "too dark." *Id.* According to McMillian, Nealy handed her a twenty dollar bill and told her to "go back to Burger King," because that is where she deserved to work. *Id.* McMillian filed suit against the Defendant in Fayette Circuit Court, alleging claims of discrimination under the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010, *et seq.* The Defendant removed the case to federal court based on diversity jurisdiction in March 2018 and moved to dismiss and compel arbitration. [Record No. 8]

The Defendant contends that McMillian never received a job offer and that she presented to the employee training session despite not having been hired. [Record No. 8-1, p. 1] In support of that assertion, it has tendered only an undated "non-selection email," which states simply "Thank you, Breyanna . . . we regret that we are unable to offer you employment with Olive Garden USA at this time." [Record No. 8-3] In deciding a motion to dismiss, the Court takes all well-pleaded allegations in the Complaint as true and construes those allegations in a light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, the Court generally may not consider matters outside the pleadings, such as the non-selection email. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

McMillian alleges that the Defendant hired her and the Court must construe this allegation as true in the absence of admissible evidence to the contrary.

## II.

Olive Garden argues that, if McMillian is permitted to proceed with her discrimination claims, she must "abide by the arbitration requirement every employee also has agreed to be bound." [Record No. 8-1, p. 2] However, McMillian contends that *she* never agreed to arbitrate *her* claims. [Record No. 9] The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). The Act provides that written agreements to arbitrate disputes arising out of contracts or transactions involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

While federal law favors arbitration, *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985), the "FAA was not enacted to force parties to arbitrate in the absence of an agreement." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000) (quoting *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997)). Accordingly, the Court must determine whether McMillian and the Defendant entered into a valid agreement to arbitrate. *See* 9 U.S.C. § 2; *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs. v. Comm's Workers of Am.*, 475 U.S. 643, 649 (1986)).

In determining whether a valid agreement to arbitrate exists, the Court applies state contract law. *Fazio v. Lehman Bros. Inc.*, 340 F.3d 386, 392-93 (6th Cir. 2003). In the case

of factual disputes, the Court treats the facts as it would in ruling on a motion for summary judgment. *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 864 (N.D. Ohio 2013). Should factual disputes arise, the party opposing arbitration bears the burden of demonstrating a genuine issue of material fact regarding the validity of the agreement to arbitrate. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

### III.

Darden, Olive Garden's parent company, maintains a dispute resolution program that has been in place since at least 2005. [Record No. 8-2, p. 2] Each employee is provided with a DRP book as part of the orientation process and is asked to sign an acknowledgment form contained therein. *Id.* at p. 3. The DRP book is approximately twenty pages in length and explains the DRP process in detail. *Id.* at pp. 6-23. The DRP includes four steps, including arbitration, which is the fourth and final step. *See id.* at p. 9. It is undisputed that McMillian did not review the DRP book or sign the acknowledgment form.[1] [*See* Record Nos. 8-2, p. 3; 9-1, p. 2.]

McMillian did review and sign the employment application, however, which included a written DRP provision.[2] The Court must consider whether this provision constitutes a valid

---

[1] The Defendant has provided the affidavit of Melissa Ingalsbe, Director of Dispute Resolution and Human Resource Compliance for Darden and its subsidiaries. [Record No. 8-2] Ingalsbe reports that the Defendant has no signed DRP acknowledgement form for McMillian because she was never an employee. McMillian submitted an affidavit stating that the Defendant did not present her with the DRP and she only learned of it through her attorney. [Record No. 9-1] The Defendant half-heartedly suggests that McMillian had knowledge of the DRP based on informational postings located in the restaurant, but this argument is based on the affidavit of Jefe Gabat, which is not filed in the record of this proceeding. [*See* Record No. 10, p. 4.]

[2] The Federal Arbitration Act requires arbitration agreements to be in writing and applies only to transactions in interstate commerce. *See* 9 U.S.C. § 2. The Court is satisfied that both of these conditions have been met. [*See* Record No. 8-2, p. 1.]

agreement to arbitrate under ordinary contract law principles. *See Gatliff v. Firestone Indus. Prods. Co., LLC*, No. 2013-CA-1568, 2015 WL 510680 (Ky. Ct. App. Feb. 6, 2015).

Definite and certain terms are required elements of any contract. *Fisher v. Long*, 172 S.W.2d 545, 547 (Ky. 1943); *Dohrman v. Sullivan*, 220 S.W.2d 973, 975 (Ky. 1949) ("[A] mere agreement to reach an agreement" at some point in the future is insufficient to create a binding contract."). To be sure, an agreement to arbitrate need not spell out the exact terms of arbitration to be enforceable. *See Indus. Servs. of Am., Inc. v. Abcom Trading Pte. Ltd.*, 869 F.Supp.2d 807, 810-11 (W.D. Ky. 2012). However, McMillian's employment application did not provide *any* terms of the DRP. The DRP clause gives no indication of what the process might be and does not even include the word "arbitrate." Olive Garden suggests that the full DRP booklet should be incorporated into the employment application, but this would be inappropriate given that McMillian did not have an opportunity to review it prior to submitting the application. *See Emery Worldwide v. AAF-McQuay, Inc.*, No. 2003-CA-1446-MR, 2005 WL 2402544, at *4 (Ky. Ct. App. Sept. 30, 2005); *Evans v. Bayles*, 787 S.E.2d 540, 545-46 (W.Va. 2016).

Olive Garden relies on *Gatliff*, 2015 WL 510680, and *Waller v. Daimler Chrysler Corp.*, 391 F.Supp.2d 594 (E.D. Mich. 2005), to advance its argument that McMillian is bound to Darden's DRP based on her submission of an employment application. However, the applications involved in *Gatliff* and *Waller* explicitly advised employees that certain claims would be resolved through arbitration and/or verified that the employee had had an opportunity to review the dispute resolution plan. 2015 WL 510680, *1-2; 391 F.Supp.2d at 596. Notably, in *Reed v. Darden Restaurants, Inc.*, 213 F.Supp.3d 813, 817-18 (S.D. W. Va. 2016), which involved the same DRP as the case at bar, the plaintiff (who worked in the restaurant for eight

months) did not deny that that he had received the DRP booklet and signed the DRP acknowledgment. Olive Garden has failed to identify any authority in which an employee has been compelled to arbitrate based solely on the employee's acceptance of a generic DPR clause contained in an employment application.

Finally, Olive Garden relies on *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993), to argue that McMillian is estopped from denying her obligation to arbitrate. However, in *Deloitte*, Noraudit (the party seeking to avoid arbitration) had received a copy of the arbitration agreement, did not object to it, and knowingly continued to benefit from using the name "Deloitte" after having reviewed the agreement. *Id*. The present case differs significantly because McMillian did not receive a copy of the DRP and worked for the Defendant for two hours, at most. There is no evidence to suggest that she learned of the arbitration agreement during those two hours and "knowingly accepted the benefits" after that time.

## IV.

Based on the foregoing, the Defendant's motion to dismiss and compel arbitration [Record No. 8] is **DENIED**.

This 22nd day of May, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge