UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BREYANNA MCMILLIAN, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 5: 18-189-DCR |
| V. | ) ) | |
| GMRI, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Breyanna McMillian ("McMillian"), an African-American female, claims that Defendant GMRI, Inc. ("GMRI") hired her to work as a server at its Olive Garden restaurant, but fired her the following day because of her skin color. McMillian has filed a motion for partial summary judgment based on facts she contends GMRI admitted by failing to tender timely responses to her requests for admission. [Record No. 40] GMRI has filed a motion seeking to withdraw the admissions or for a finding that no admissions have been made. [Record No. 41] GMRI has also moved for summary judgment. [Record No. 42]

I.

McMillian submitted an online application for employment at GMRI's Olive Garden restaurant in Lexington, Kentucky in early November 2016. [Record Nos. 24, ¶ 8; 42-3] Service manager Josh Barcomb interviewed her for a server position shortly thereafter and, according to McMillian, told her to attend a training session at the restaurant the following day. [Record No. 42-5, pp. 5, 15] Barcomb asserts that he told McMillian about the training schedule at the beginning of the interview, but that he ultimately decided not to offer her a

position based on some of her answers to his questions. Barcomb reports that he or another manager sent McMillian an automated e-mail on November 6, 2016, advising her that she had not been selected for employment. [Record Nos. 42-6, p. 9; 42-9] McMillian reports that she never saw the e-mail, but concedes that she no longer had access to the e-mail address listed in her employment application. [Record No. 42-5, pp. 3-6; 42-8, p. 3]

McMillian reported to Olive Garden for training on November 7, 2016. [Record No. 42-5, p. 9] She stated that there were eight to ten new employees in attendance at this training session. *Id.* at 12. The employees included Majesty Spikener (an African-American woman) and an individual McMillian described as "a dark-skinned guy." Culinary manager Sean Nealey led the training session, during which McMillian asserts that Nealey "kept looking at [her] strange" [sic]. *Id.* at p. 13. She concedes that she was wearing a pink shirt, jacket, and pants while all of the other participants were wearing uniforms. *Id.* at 13.

Barcomb was working on November 7, 2016, but did not participate in the training session. He reports that, during the day, he noticed an individual who was not dressed in the company uniform. [Record No. 42-6, p. 9] Later, when the training group took a break, Barcomb recognized the individual as McMillian. *Id.* Barcomb advised Nealey that he had not hired McMillian, and the two men took her aside. *Id.* Nealey asked McMillian who had hired her and she responded "Josh."

The parties' stories diverge significantly at this point. McMillian contends that Barcomb laughed and denied having hired her. [Record No. 47-1, p. 1] She reports that Nealey then told her that he would not have hired a person like her because she was "too dark" to work at the restaurant. McMillian says Nealey then took a twenty-dollar bill from his pocket and

handed it to her, telling her to "go back to Burger King because that is where [she] deserved to work." [Record No. 47-1] McMillian contends that she left in tears.

GMRI disputes this version of events. Barcomb testified that he and Nealey took McMillian aside and Nealey asked who had hired her. [Record No. 47-7, p. 5] According to Barcomb, McMillian pointed to him and said, "Josh did." Barcomb contends that he advised McMillian that he had not hired her and that she should have received an e-mail. Barcomb and Nealey then called their supervisor, Jefe Gabat, to determine the best way to handle the situation. [Record No. 42-6, p. 9] The defendant ultimately stood by its decision not to hire McMillian, but felt that she should be compensated for her time. *Id.* According to Barcomb, Nealey took a twenty-dollar bill from the bar and handed it to McMillian. Barcomb also testified that he and Nealey offered McMillian a meal and to call for transportation. *Id.* at p. 10.

Majesty Spikener (also represented by Attorney Ryan Robey) filed a discrimination suit against Olive Garden in February 2018. [*See* Lexington Civil Action No. 5: 18-188.] McMillian testified in her deposition that Spikener contacted her approximately one month after the training session and "wanted [her] to go to Ryan." [Record No. 42-5, p. 19] Spikener subsequently set up a meeting for herself and McMillian at Robey's office. McMillian filed suit on February 17, 2018, alleging that GMRI fired her because of her skin color, in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010, *et seq.*, and 42 U.S.C.§ 1981.

## II.

The Court must first address the defendant's untimely answers to McMillian's requests for admission and her resulting motion for summary judgment. McMillian served GMRI with requests for admission on December 20, 2018. Accordingly, GMRI's responses were due on

or before January 21, 2019. *See* Fed. R. Civ. P. 36(a); 6(a)(1). However, on January 20, 2019, at 10:46 p.m., GMRI's attorney e-mailed McMillian's attorney, requesting an extension of time until February 5, 2019 to respond to the requests. [Record No. 44-10] McMillian's attorney responded by e-mail the following day, advising the defendant that McMillian agreed to the extension. [Record No. 44-11]

Counsel for GMRI sent a second e-mail to the plaintiff's attorney on February 5, 2019, at 9:34 p.m. [Record No. 44-12] GMRI's attorney advised: "We're going to need a few more days to finish up written discovery responses. [We] have both been out of the office with flu/sinus issues, and it's put us behind schedule unfortunately. We apologize for the delay." McMillian's attorney did not see the e-mail message, however, because it went to his spam folder. McMillian filed a motion for summary judgment on February 9, 2019, based on matters purportedly deemed admitted as a result of GMRI's failure to respond to the requests for admission by the agreed deadline. [Record No. 36]

The plaintiff subsequently learned of GMRI's second e-mail and withdrew her motion for summary judgment. [Record No. 37] However, she maintained that the requests for admission were deemed admitted and preserved her right to re-file the motion in the future. McMillian did so on March 12, 2019, arguing that the untimely responses constitute conclusively-established facts which entitle her to judgment as a matter of law. [Record No. 40]

Rule 36(a)(3) of the Federal Rules of Civil Procedure provides that a matter is admitted unless, within 30 days of being served, the party to whom a request for admission is directed serves a written answer or objection. A matter admitted under this rule is conclusively established unless the Court, on motion, permits the admission to be withdrawn or amended.

Fed. R. Civ. P. 36(b). The Court may permit withdrawal or amendment if doing so would promote presentation of the case on the merits and the requesting party would not be unduly prejudiced. *Id.*

McMillian asked GMRI to admit, *inter alia*, that it terminated her employment because of her skin color. [Record No. 45-1, p. 6] Accordingly, upholding GMRI's admissions would practically eliminate any presentation of the merits of this case. Whether the defendant would be prejudiced by withdrawal of the admissions requires a closer analysis. Prejudice under Rule 36(b) "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Riley v. Kurtz*, 194 F.3d 1313, *3 (6th Cir. 1999) (table). In requesting the initial extension until February 5, 2019, GMRI assured McMillian's attorney that the new deadline would "get [the responses] in your hands before the next depositions." [Record No. 40-3] However, GMRI did not serve the responses until February 11, 2019, following Josh Barcomb's deposition on February 8, 2019.

McMillian contends that she was prejudiced by GMRI's failure to serve the responses prior to Barcomb's deposition. However, McMillian has not identified any specific reason that she was prejudiced by not having the responses before Barcomb's deposition. Prior to the deposition, GMRI gave McMillian's attorney "two documents, totaling five pages" that defense counsel determined were related to Barcomb. [Record No. 40-1, pp. 4-5] Neither party has identified the precise nature of these documents. However, after reviewing the requests for admission and GMRI's responses, it appears that all topics addressed in the requests were also covered in Barcomb's deposition. The plaintiff has not identified, and the Court did not locate, any portion of Barcomb's deposition testimony that was inconsistent with the responses to requests for admission.

There is no question that GMRI's counsel's conduct leaves something to be desired. While parties may stipulate to a period longer than 30 days in which to respond to requests for admission, informing the opposing party at the eleventh hour that counsel "needs a few more days" does not suffice. However, in light of the strong preference for resolution on the merits and the lack of prejudice to the plaintiff, the defendant's motion to withdraw the purported admissions will be granted. And because the plaintiff's motion for partial summary judgment relies on deemed admissions resulting from GMRI's failure to file timely responses, it will be denied.

## III.

The Court will grant summary judgment when the moving party shows that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party has satisfied this burden, the burden shifts to the nonmovant. The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). In other words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2019) (citation and alteration omitted).

The Court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. The Court may not weigh the

evidence or make credibility determinations, but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52 (1986). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The existence of a scintilla of evidence favoring the nonmovant is not sufficient to avoid summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 252).

**IV.**

The Kentucky Civil Rights Act ("KCRA") prohibits employers from discriminating against any individual because of the individual's race or color. Ky. Rev. Stat. § 344.050. "Claims under the KCRA are analyzed similarly to claims under Title VII [of the Civil Rights Act]." *Roof v. Bel Brands USA, Inc.*, 64 F. App'x 492, 496 (6th Cir. 2016). Title 42 U.S.C. § 1981 prohibits intentional race discrimination in the making and enforcing of contracts.[1] § 1981(a). The legal elements and burden of proof for a section 1981 claim are identical to those under Title VII. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). Such claims may be proved by presenting circumstantial or direct evidence of discriminatory intent.

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in an adverse employment action. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *Mitchell*

---

[1] The Court assumes for the sake of argument that § 1981 applies to the alleged employment relationship in this case. *See Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 673-74 n.3 (6th Cir. 2005) (whether at-will employment constitutes "contract" for purposes of § 1981 depends on state law); *Louisville Cycle & Supply Co. v. Baach*, 535 S.W.2d 230 (Ky. 1976) ("hiring at will" is a "contract under which rights and obligations exist prior to its termination).

*v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). It typically requires an "unmistakable verbal assertion that the plaintiff was treated adversely because of [her] race." *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). The plaintiff bears the burden of showing that she suffered an adverse employment consequence that was related to the employer's illegal discriminatory animus.

Circumstantial evidence is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642 (6th Cir. 2012). To establish a *prima face* case of discrimination using circumstantial evidence, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) that she was discharged; (3) that she was qualified for the position held; and (4) that she was replaced by someone outside the protected class. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

It is undisputed that the plaintiff is African-American and, therefore, a member of a protected class. 42 U.S.C. § 2000e-2; Ky. Rev. Stat. § 344.050. However, it is unclear why McMillian thinks she was replaced by someone outside the protected class, as she conceded in her deposition that GMRI hires servers of all different races and skin colors, including dark-skinned African Americans. [Record No. 42-8, p. 10] There is no direct evidence concerning who "replaced" McMillian, but she reported that a dark-skinned African American male was participating in the new employee training. Barcomb's failure to recall from memory additional "dark-skinned" individuals employed at the Olive Garden restaurant does not suggest that McMillian was replaced by someone outside the protected class.

There is an additional problem with McMillian's claim. Namely, a jury could not reasonably conclude that she was hired in the first instance. Barcomb testified that he usually begins interviews by providing the candidate with the training schedule because, if the candidate is not available for training, he often will discontinue the interview. [Record No. 42-6, p. 7] Barcomb contends that he began McMillian's interview by describing the upcoming training schedule, but soon realized that McMillian was not a good fit for the position based on a story she told him about arguing with a customer at her then-current job. (McMillian remembered telling Barcomb this story and repeated it during her deposition. [Record No. 42-8, p. 2]) Barcomb did not tell McMillian at the time that she was not being hired because, he explained, e-mailing a rejection is less harsh than telling the candidate face-to-face. [Record No. 44-5, p. 4]

GMRI uses a portal called "TAS" to review applications and communicate with candidates online. [Record No. 42-6, p. 3] All managers have access to TAS, and any manager can arrange an interview with a candidate who has applied. Barcomb testified that he or manager Joey Whitlock caused TAS to send a non-selection e-mail to the address provided in McMillian's application. [Record No. 47-7, pp. 2-3] McMillian testified during her deposition that she was no longer using that e-mail address and was unsure why she provided it in her application. [Record No. 42-5, pp. 3, 6]

The defendant has tendered an action log from TAS indicating that GMRI sent McMillian three e-mail messages. The first, sent on November 5, 2016, at 12:58 p.m. is labeled "Application process complete." The second, sent that same afternoon at 1:23 p.m. is referred to as "Interview 1." Finally, "Discontinue w/ Email" was sent on November 6, 2016, at 4:44

p.m. [Record No. 42-2] Nothing in the activity log suggests that the defendant extended an offer of employment to McMillian. *Id.* at p. 8.

In light of this evidence, the plaintiff does not create a genuine issue of material fact based simply on her unsupported testimony. McMillian does not recall any particular words Barcomb used to offer her a server position, but contends that he told her to attend training. [Record No. 42-5, pp. 14-15; Record No. 47-5] McMillian's husband stated in an affidavit that the plaintiff told him immediately after the interview that she had received the job. [Record No. 47-2] However, his testimony also is based on McMillian's unsubstantiated belief. To the extent McMillian suggests that GMRI may have been able to alter the TAS action log, the defendant's Manager of HR Systems and Process Management, Jennifer Guisti, provided a declaration indicating that the log is automatically generated and cannot be altered. [Record No. 51-1] Further, McMillian has failed to come forward with any additional evidence indicating that she was offered the job, and has not attempted to explain the inconsistencies concerning her e-mail address and her failure to wear a uniform.

Additionally, it makes little sense that Barcomb would hire McMillian following an in-person interview and then fire her the next day based on the color of her skin. McMillian focuses on Nealey's alleged statements, but to the extent she faults Barcomb for denying having hired her, there is a strong inference that discrimination did not occur when "the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003). There is also no evidence that Barcomb or Nealey had any decision-making authority with respect to firing employees. *See Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (comments by manager lacking any involvement in the

decision-making process do not constitute direct evidence). Barcomb testified that all managers may hire new employees but, the general manager (who is a minority) is the only individual with authority to terminate employment. [Record No. 47-7, p. 6]

In short, McMillian has not come forward with sufficient evidence to withstand GMRI's motion for summary judgment with respect to her claims under the KCRA and 42 U.S.C. § 1981.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion for summary judgment [Record No. 40] is **DENIED**.

2. The defendant's motion to withdraw admissions [Record No. 41] is **GRANTED**.

3. The defendant's motion for summary judgment [Record No. 42] is **GRANTED**.

Dated: April 22, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge